UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANCE WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 9379 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| LAKE COUNTY SHERIFF'S OFFICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This suit stems from an incident defendant rightly calls tragic in its briefing. A man in police custody suffered injuries that ultimately proved fatal. Plaintiff Lance Ware ("Ware"), a 54-year-old African American man (1st Am. Compl. ¶8), brings employment discrimination and retaliation claims under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq., against his employer, the Lake County Sheriff's Office ("Sheriff" or "defendant"). Ware alleges that defendant meted out discipline to command officers involved in the incident in a discriminatory fashion and retaliated against him after he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

Before the court is the defendant's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Ware's amended complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is denied.

### I. RULE 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*, *supra*). A complaint satisfies this standard when its factual allegations "raise

1

a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## II. FACTS ALLEGED IN THE AMENDED COMPLAINT

Ware began working for the defendant as a "Correctional Officer Sheriff" on November 9, 1988). (¶ 13.) He was promoted in 1996 to corporal, a rank that defendant no longer uses, and again to sergeant in 1997. (¶¶ 15–16.) He received "meets expectations" (or the "functional equivalent") on performance reviews from his hiring date through, but not including, August 2014. (¶ 18.)

Eugene Gruber ("Gruber"), a Caucasian male, was arrested and brought to the Lake County jail at approximately 9:00 a.m. on October 31, 2011. (¶ 21.) Ware was assigned to "floor command" for the day shift (6:00 a.m. to 3:00 p.m.) when Gruber arrived. (¶ 26.) "Gruber became unruly," and the Correctional Response Team ("Tactical Unit") took control of the situation. (¶ 22.) "Whenever the Tactical Unit responds to a situation, the standard chain of command is interrupted. The Tactical Unit commands control of the situation and its officers are

not subject to the normal chain of command."[1] (¶ 23.) Instead, correction staff "stand down."
(¶ 24.) As a result, Ware had a limited role in the incident; he "was limited to observing two
Tactical Unit officers bringing Gruber out of the shower, leaving the shower room to go to the
property area to find dry prison clothing for Gruber, and returning to the shower area to give the
clothing to the Tactical Unit officers item by item" (¶ 27) and following the tactical unit officers
as they carried Gruber toward the cells in the booking area (¶ 28).

"While Gruber was under their control, Tactical Unit officers caused serious injury to
him, resulting in his death several months later." (¶ 25.) Gruber's family sued, and Lake County
and the defendant settled for approximately $1.9 million in January 2014. (*See* ¶¶ 31–32.)
On May 27, 2014, Defendant demoted Ware to correctional officer after holding a prediscipline
meeting five days earlier. (¶ 35.) Before May 2015, defendant disciplined only two command
officers,[2] Ware and Sergeant Eweisi ("Eweisi"), an African-American woman, for the incident.
(*See* ¶¶ 30, 37.) Defendant did not discipline any other command officer for the Gruber incident
before May 2015, including any member of the all-Caucasian Tactical Unit. (*See* ¶ 36.)

Ware filed a charge of discrimination with the EEOC challenging his demotion on June
24, 2014. (1st Am. Compl. ¶ 39; *see also id.* Ex. A.) After defendant received notice of the
charge, Ware received his first ever—inclusive of the years following the Gruber incident—
performance review rating him below "meets expectations" on August 31, 2014. (*See* 1st Am.
Compl. ¶ 40, 41.) Ware objected in writing, stating, among other things, that he believed the

---

[1] Defendant effectively disputes this allegation in its memorandum in support of its motion to dismiss. (ECF No. 26 at 3.) According to defendant, Ware could have intervened. (*Id.*) The court must hew to the amended complaint's allegations, however.
[2] The court emphasizes that Ware alleges that no other "command officers" were disciplined. He does not say that no one else was disciplined, and although the court ultimately does not consider it today, the arbitrator's award attached to the defendant's motion to dismiss shows that at least four other corrections officers were disciplined in connection with the Gruber incident. (*See* ECF No. 26-2 at 8.)

review was retaliatory. (*Id.* ¶ 40.) Ware amended his EEOC charge on December 30, 2014, to add retaliation allegations premised on his negative performance review. (*See id.* ¶¶ 6, 40.) Approximately six months later, in May 2015, defendant fired Dale Novarro ("Novarro"), a Caucasian corrections sergeant who was on duty during the midnight shift (10:00 p.m. to 6:00 a.m.) on the night before the Gruber incident. (¶¶ 42–43.) Ware characterizes Novarro's discharge as a "remedial termination." (1st Am. Compl. 6.)

### III. "MATTERS OUTSIDE THE PLEADINGS"

Defendant asks the court to consider two exhibits attached to its memorandum in support of its motion to dismiss. (ECF Nos. 26-1, 26-2.) The first, personnel order P14-024 dated May 27, 2014, apparently memorializes the sheriff's decision to demote Ware. (*See* ECF No. 26-1 at 1.) The order states that Ware "failed to properly supervise" his subordinates on the date in question and made false statements during the ensuing investigation. (*See id.*) Defendant represents that Ware grieved that decision. Its second exhibit purports to be an arbitrator's decision on Ware's grievance (as well as grievances of other noncommand officers disciplined in connection with the same incident) setting forth detailed findings of fact and concluding that just cause existed for Ware's demotion. (*See* ECF No. 26-2 at 4-8, 33-47.)

Considering "matters outside the pleadings" on a Rule 12(b)(6) motion ordinarily converts it to a motion for summary judgment. Fed. R. Civ. P. 12(d). According to defendant, the court can consider the documents attached to its motion to dismiss under the incorporation doctrine and by taking judicial notice of them without converting the motion to a motion for summary judgment. Neither doctrine applies here, however.

**A. No Incorporation Because the Documents Are Not Central to Ware's Claims**

According to defendant, Ware's amended complaint incorporates the personnel order and arbitrator's decision by alleging that he was demoted. (*See* 1st Am. Compl. ¶ 35.) "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), but Ware did not attach the personnel order or arbitrator's decision to his amended complaint. When the plaintiff does not attach a document, it can still be considered if the complaint refers to it, it is "central to the plaintiffs' claim," and it is "concededly authentic." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)).

Ware does not even plead in his amended complaint that defendant handed down a written decision demoting him or that he grieved that decision (*see* ECF No. 21 ¶¶ 33–37), so neither document plays a "central [role in] the plaintiff's claim." *Santana*, 679 F.3d at 619 (holding transcript of news segment referred to in complaint could be considered under incorporation doctrine). Unlike a breach-of-contract claim based on a written document, Ware's claims for relief do not depend on the existence or contents of the written personnel decision or the arbitrator's award, *see, e.g.*, *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 n.4 (7th Cir. 2003) (approving consideration of contract attached to motion to dismiss where plaintiff referenced it in the complaint); *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1992) (holding letters referred to in complaint establishing the parties' contractual relationship were incorporated). Ware pleads only the fact of the demotion. If defendant's exhibits could be considered just because they shed further light on the circumstances surrounding Ware's demotion when Ware did not even mention those documents in his amended complaint, anything else bolstering the defendant's position could as well, and incorporation would become a

5

backdoor to a one-sided summary judgment procedure—the very thing Rule 12(d) seeks to prevent. *See Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011) ("allowing Teachbook to cherry pick portions of Facebook's website to introduce via a motion to dismiss simply because the complaint implicates the two websites would convert an examination of the complaint into full-blown summary judgment analysis. This result would vitiate an otherwise narrow exception to the general rule . . . ."). Instead, as defendant's briefing makes clear, it uses the documents attached to its motion to dismiss to bolster several defenses it advances, so the incorporation doctrine does not apply. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691–92 (7th Cir. 2012) (holding that conversion, rather than incorporation, was appropriate to consider videos to assess fair-use defense and rejecting argument that incorporation-by-reference doctrine should be expended to "encourage courts to consider affirmative defenses on 12(b)(6) motions and thereby reduce the threat of nuisance suits"); *cf. Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (explaining that Rule 12(b)(6) dismissal on res judicata affirmative defense was inappropriate and that defendant should have pleaded defense and moved for judgment on the pleadings under Rule 12(c)).

**B. No Judicial Notice Because the Documents' Evidentiary Value is Subject to Reasonable Dispute**

Nor can the court take judicial notice of the documents attached to defendant's motion to dismiss. *See* Fed. R. Evid. 201. As an exception to the rule requiring the court to stay within the complaint's four corners on a Rule 12(b)(6) motion, a court can consider a document "of which [it] may take judicial notice." *Facebook, Inc.*, 819 F. Supp. 2d at 770 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (other citations omitted). A court can properly take judicial notice of an adjudicative fact that "is not subject to reasonable dispute

6

because it is" either "generally known within the trial court's territorial jurisdiction," Fed. R. Evid. 201(b)(1), or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," *id.* R. 201(b)(2). Judicial notice "is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (citing *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996)) (other citations omitted). As the party requesting that the court take judicial notice, defendant must supply the court with the necessary information. Fed. R. Evid. 201(c).

The court looks first to the purpose for which defendant wants to notice the documents attached to its motion. The purpose for which a document is judicially noticed matters. *See Hecker*, 556 F.3d at 582-83 (7th Cir. 2009) (contrasting propriety of taking judicial notice of public filings to show what was disclosed, which is proper, and assuming the truth of contested factual representations in those documents, which is not). For instance, judicial notice is proper to establish the dates on which defendant demoted Ware and the arbitrator upheld that decision as well as whose name appears on the decision. *See, e.g.*, *Giwa v. Copmea*, No. 09-CV-1312, 2010 WL 2635775, at *1 n.1 (C.D. Ill. June 28, 2010) (noticing documents filed in public record to establish the employee's date of termination); *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 02 C 9199, 2004 WL 407012, at *3 (N.D. Ill. Mar. 4, 2004) (noticing public records establishing dates on which defendant decided to terminate the plaintiff and granting 12(b)(6) motion). The court uses defendant's exhibits for that purpose below. But defendant wants the court to use the personnel order and arbitrator's decision for a different purpose—establishing that it had a legitimate reason for demoting Ware, that the reason was nondiscriminatory, and, as a necessary predicate, that defendant's and the arbitrator's factual

findings underpinning their decision are correct and that the facts are as they were found to be. (*See* Mem. Supp. Mot. to Dismiss 6, 8–9 (relying on exhibits to argue that facts alleged in the complaint "are contradicted" and that "the facts conclusively show that the employer had a legitimate reason for the discipline").)

Taking judicial notice for those purposes is inappropriate here. "Application of a previous finding to a latter proceeding must be beyond reasonable dispute before a court may take judicial notice because 'the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed.'" *Gen. Elec.*, 128 F.3d at 1083 (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 743–44 (7th Cir. 2016) (echoing and applying this requirement); *Zang v. Alliance Fin. Servs. of Ill., Ltd.*, 875 F. Supp. 2d 866, 882 (N.D. Ill. 2012) (applying this rule to preclude judicial notice of disputed factual findings in administrative record).

Neither the personnel order nor the arbitrator's decision purports to pass on whether the reason for the demotion is nondiscriminatory. The arbitrator analyzed only whether "just cause" within the meaning of the applicable contract existed. (ECF No. 26-2 at 44; *see id.* at 44–45 (weighing seriousness of conduct found against Ware's employment and disciplinary history when "assessing the propriety of the amount of discipline imposed").) Because the arbitrator's findings on whether just cause existed under the applicable contract do not touch on whether a discriminatory purpose animated Ware's demotion either directly or as pretext, both could be true. As a result, the decision's evidentiary value in this proceeding can be reasonably disputed, and effectively directing a verdict via judicial notice cannot be justified. *See Gen. Elec.*, 128 F.3d at 1081–83 (holding district court could not take judicial notice of its own findings that a

class-action settlement was fair, reasonable, and adequate in related fraudulent transfer suit because under the applicable law, "It is possible that the settlement transaction is simultaneously fair . . . and fraudulent"); *Facebook, Inc.*, 819 F. Supp. 2d at 773 (declining to take judicial notice of trademark documents filed with European trademark authority because their evidentiary value could be reasonably disputed in trademark litigation).

Additionally, the personnel order and arbitrator's award rest on factual findings Ware contests in his amended complaint. As a result, even if the court considered those documents, the conflicting allegations in the complaint prevail at the Rule 12(b)(6) stage. *See Hecker*, 556 F.3d at 582 (holding that district court's reliance on judicially noticed documents was appropriate for limited purposes and affirming Rule 12(b)(6) analysis because "the district court took plaintiffs' point of view on all . . . disputes" about factual representations in the documents); *see also Zang*, 875 F. Supp. 2d at 882 (holding factual findings in administrative order could be reasonably disputed and so could not be judicially noticed). Coming at the same point from a different perspective, the factual findings in the personnel order and arbitrator's decision meet the definition of hearsay. One could argue that the exception for statements in public records applies, *see* Fed. R. Evid. 803(8)(iii)–(iv), but "[i]t takes more than an exception to the hearsay rule . . . to justify judicial notice," *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008) (holding that exception to hearsay rule for statements in documents affecting an interest in property did not justify taking judicial notice of deed on Rule 12(b)(6) motion where the plaintiff alleged the deed was forged).

Judicial notice is a powerful tool that must be used with caution." *Daniel*, 833 F.3d at 742 (quoting *Gen. Elec.*, 128 F.3d at 1018). Accordingly, the court declines defendant's invitation to consider the documents attached to its memorandum in support of its motion to

dismiss, except for the limited purposes of establishing the dates of the demotion decisions and who facially authorized them. In so doing, the court implies nothing about the weight or sufficiency of those documents should they ultimately be presented at a later stage of these proceedings.

## IV. ANALYSIS OF MOTION TO DISMISS

Defendant mounts a different challenge to each of the counts of Ware's complaint. On his § 1983 claim, defendant argues that Ware fails adequately to allege a basis to impute liability to it under *Monell v. Department of Social Services*, 436 U.S. 658, 694–95 (1978), and its progeny. Defendant maintains that Ware's Title VII race discrimination claim consists of "only formulaic recitations" of the elements. (Mem. Supp. Mot. to Dismiss 7.) Finally, defendant argues that Ware fails to allege a cognizable adverse employment action in support of his Title VII retaliation claim. The court considers each argument in turn

**A. Plaintiff's § 1983 Claim Survives Based on Evidence of the Sheriff's Personal Involvement**

"[T]o state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Sims v. Cty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 381(1989)) (other citations omitted). "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by municipal policymakers." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (quoting *City of Canton*, 489 U.S. at 389) (brackets in original). A policy can be established in three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by

a person with final policymaking authority. *Simms*, 506 F.3d at 515 (citing *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007)); *accord. Rice*, 675 F.3d at 675.

Defendant reminds the court that in *Ashcroft v. Iqbal*, the Supreme Court found a complaint's allegations, in context, that the defendants "adopt[ed] a policy approving 'restrictive conditions of confinement' for post–September 11 detainees until they were 'cleared by the FBI'" did not plead a plausible claim of "purposeful discrimination." 556 U.S. at 683.[3] The Seventh Circuit recently applied *Iqbal* and its companion case, *Twombly*, 550 U.S. 544, to *Monell* allegations in *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016). In *White*, the district court dismissed an arrestee's § 1983 *Monell* allegations because they were "based upon the sole allegation that O'Donnell acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant." *Id.* at 843 (quoting district court). The Seventh Circuit ultimately affirmed for a different reason but held that the district court erred when it dismissed the complaint for failure to state a *Monell* claim. *Id.* at 843–44 ("This was an error but a harmless one."). As the *White* court explained, the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) "that federal courts may not apply a heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under 42 U.S.C. § 1983 . . . survived the Court's later civil pleading decisions in *Iqbal* and *Twombly*." *Id*. at 843–44 (internal quotation marks and ellipsis omitted); *see also Sims,* 506 F.3d at 514 (applying *Leatherman* after *Twombly*). The *White* court held that the plaintiff's allegations and a preprinted warrant application form

---

[3] Defendant also cites *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010), but it is a Title VII and age-discrimination case decided at summary judgment. The *Naik* court did not rule on what must be pleaded to survive a Rule 12(b)(6) motion to dismiss *Monell* allegations. *See id.* at 599–600.

supporting his claims were sufficient to state a claim of a policy; the plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process." *White*, 829 F.3d at 844 (citing *Jackson v. Marion Cnty.*, 66 F.3d 151, 152–53 (7th Cir. 1995)).

In his complaint, Ware pleads that the sheriff's "actual practice over time reflected a custom and policy of treating African-American Corrections Officers and Corrections Command Officers differently than similarly situated Caucasian Corrections Officers and Corrections Command Officers." (ECF No. 21 ¶ 52.) As defendant points out, aside from the Gruber incident, the complaint does not describe any specific prior incidents of alleged discriminatory conduct. The amended complaint does allege that "Defendant's discriminatory discipline of only African-American Command staff in connection with the Gruber incarceration, and simultaneous protection of Caucasian Command staff, indicates a widespread practice that constitutes a custom and practice within the [Lake County Sheriff's Office]." (1st Am. Compl. ¶ 38.)

Given those allegations, defendant understandably focuses its briefing on the question of whether a single incident of discrimination can support an inference that a widespread custom or practice exists. *See Jackson*, 66 F.3d at 152 ("The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers. When this method of proof is used, proof of a single act of misconduct will not suffice . . . ." (internal citation omitted)); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) ("To demonstrate that the County is liable for a harmful custom or practice, the plaintiff must show that County

policymakers were 'deliberately indifferent as to [the] known or obvious consequences.'" (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002))).

But defendant's own documents, which it asks the court to notice, show that the May 27, 2014, personnel order demoting Ware was issued "[b]y [o]rder [o]f Mark C. Curran, Jr., Sheriff." (*See* ECF No. 26-1 at 3.) "Illinois sheriffs have final policymaking authority over jail operations." *Barwicks v. Dart*, Case No. 14-CV- 8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (quoting *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 (7th Cir. 2000)). As the inference that a final policymaker here was directly involved in the allegedly discriminatory demotion is plausible, the complaint plausibly states a claim of *Monell* liability. *See White*, 829 F.3d at 844 (holding that allegation of single incident in which warrant was issued without factual basis coupled with evidence that preprinted warrant application did not have a space for facts plausibly alleged existence of custom or practice of issuing warrants without factual basis); *Killinger v. Johnson*, 389 F.3d 765, 771–72 (7th Cir. 2004); *Jackson,* 66 F.3d at 152 (holding allegation of cover-up of single incident use of excessive force sufficed to allege municipality's direct involvement in false arrest); *Barwicks*, 2016 WL 3418570, at *4 (holding complaint's allegations of personal involvement in adopting policies plausibly alleged *Monell* claim).

**B. Ware Has Stated a Title VII Discrimination Claim**

Title VII forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C. § 200e-2(a)(1) (West 2017). Asserting that this is not a "simple" discrimination case, Defendant invokes the burden-shifting analysis first set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is used to evaluate some Title VII discrimination claims at summary judgment. (*See* Mem. Supp. Mot. to Dismiss 7–9.) For instance, defendant cites *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 546 (7th Cir. 2002) to argue that Novarro's firing approximately a year after Ware's demotion means that he cannot make out a prima facie case at the first *McDonnell-Douglas* step. (*Id.* at 8–9.) Defendant submits that Ware must plausibly allege in his complaint that a conspiracy existed to overcome this issue. (*Id.* at 9.) And at the second *McDonnell-Douglas* step (pretext), the personnel order and arbitrator's decision show that defendant had a legitimate, nondiscriminatory reason for firing Ware, according to defendant, so the court should require him, in effect, to plead more, though how much more defendant does not say—presumably enough to create a fact issue on pretext at the third *McDonnell-Douglas* step. (*See id.* at 7–8.)

The Supreme Court rejected heightened pleading standards for Title VII claims in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–15 (2002). *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 537 (7th Cir. 2016) *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Neither *Twombly* nor *Iqbal* changed *Swierkiewicz's* holding. *Hatcher*, 829 F.3d at 537 (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) and *Swanson*, 614 F.3d at 404); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). And the Supreme Court in *Swierkiewicz* explained that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement," 534 U.S. at 510, and held that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *id.* at 511.

However defendant frames its contentions, it ultimately wants the court to flout the holding of *Swierkiewicz* and require Ware to surmount a higher pleading standard than what Rule

14

8(a)(2)'s "short and plain statement" language requires.  Defendant does not argue that Ware's allegations of race discrimination fail to comply with the notice pleading requirements of Rule 8(a)(2).  His amended complaint identifies the allegedly discriminatory act and gives the relevant dates and identities of some of the people involved.  (*See* 1st Am. Compl. ¶¶ 21–39.)  He need do nothing more.  *See Swierkiewicz*, 534 U.S. at 514 (holding complaint gave fair notice of discrimination claim because it "detailed the events leading to [the plaintiff]'s termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination"); *Hatcher*, 829 F.3d at 537–38 (holding complaint gave fair notice of retaliation claim by alleging that plaintiff made EEOC complaint, supervisor learned of it, and supervisor subsequently denied plaintiff tenure); *Carlson*, 758 F.3d at 827 (holding that complaint sufficiently alleged sex discrimination claim because it identified which positions the plaintiff sought but was denied and attributed the denials to sex discrimination).

Defendant worries about the expense and time that will be expended in "unlimited discovery" that will be allowed if Ware is not required "to plead more."  (Mem. Supp. Mot. to Dismiss 9.)  The Court in *Swierkiewicz* put the argument that plaintiffs could conduct discovery on baseless suits without a heightened pleading standard to rest: "A requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" 534 U.S. at 514 (quoting *Leatherman*, 507 U.S. at 168).  In addition, the court has a number of tools at its disposal to shape discovery to avoid undue burden and expense.  *See* Fed. R. Civ. P. 16(b); 26(c).  Defendant remains free to make its concerns heard as a discovery plan is formulated.

**C. Title VII Retaliation Claim: Plaintiff Has Alleged an Adverse Employment Action Negatively Affecting His Promotability and Pay Prospects**

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [this subchapter,] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [this subchapter.]." 42 U.S.C. § 2000e–3(a). To state a Title VII retaliation claim, Ware must plausibly allege that "he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016), *cert. denied*, No. 16-856, 2017 WL 77803 (Feb. 21, 2017) (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015)). Defendant moves to dismiss Ware's retaliation claim for failure to allege a cognizable materially adverse action. On a retaliation claim, "an action is only [materially] adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1006–07 (7th Cir. 2012) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) ("[T]he challenged adverse action need not be one that affects the terms and conditions of employment . . . ." (citing *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007))). So the question is whether Ware's allegation that he received a performance rating below "meets expectations" for the first time in more than twenty years of employment after he filed a charge of discrimination with the EEOC (1st Am. Compl. ¶ 40) plausibly alleges an action that would dissuade a reasonable employee from engaging in activity Title VII protects.

Defendant first cites an explanatory parenthetical in *Langenbach v. Wal-Mart Stores,*

*Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) briefly describing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) as holding that "negative performance evaluations alone are not an adverse employment action." (Mem. Supp. Mot. to Dismiss 10.) In *Brown*, *supra*, the Seventh Circuit observed that "it is not clear whether a negative performance review, standing alone, can *ever* constitute a materially adverse employment action in the retaliation context." 700 F.3d at 1109 (collecting and comparing cases). In *Silverman v. Board of Education of the City of Chicago*, the Seventh Circuit reasoned that "context matters to the determination of what constitutes a materially adverse action" and held that a negative performance review the plaintiff received "could constitute an adverse action" at summary judgment. 637 F.3d 729, 741 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). When finding no adverse employment action at the summary judgment stage, the Seventh Circuit has repeatedly chided plaintiffs for not trying to show how the negative review or reprimand "affected [the plaintiff's] employment from that time forward." *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003)); *see Poullard*, 829 F.3d at 856–57 (holding letter admonishing plaintiff was not adverse action and noting that the plaintiff did not explain "what effect if any that letter had on his compensation, career prospects, or conditions of employment").

The amended complaint does not allege what, if any, effects the negative performance review Ware received had on his compensation, working conditions, or chances of career advancement. All that is left to speculation.

In his response to the instant motion, however, Ware asserts that the negative performance review "affected [his] promotability and resulted in impaired earning capacity."

17

(ECF No. 27 10.)  Because the assertions in Ware's response are consistent with the facts alleged in his amended complaint, they may be considered in deciding defendant's Rule 12(b)(6) motion. *See, e.g.*, *Holmes v. Engleson*, Case No., 16 C 5234, 2016 WL 6623992, at *1 (N.D. Ill. Nov. 9, 2016) (court will "will consider any additional factual allegations in Plaintiff's response, where consistent with the factual content of the complaint." (citing *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015))); *Pioneer Elecs. (USA), Inc. v. Erazmus*, No. 97 C 6152, 1998 WL 150706, at * 1 (N.D. Ill. Mar. 30, 1998) ("[T]he liberal notice pleading mandated by Rule 8 requires district courts to consider on a Rule 12(b)(6) motion any additional facts argued in plaintiff's response that are consistent with the complaint."  (citing *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992) and *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992))).  Because Ware's allegations that the performance review negatively affected his promotability and earning capacity are sufficient to survive a Rule 12(b)(6) motion, the motion to dismiss his retaliation claim is denied.  *See Harris v. Illinois*, 753 F. Supp. 2d 734, 740 (N.D. Ill. 2010) (citing *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009)) (denying Rule 12(b)(6) motion because the plaintiff "alleged that the oral reprimand limited her opportunities for advancement. More detail is not required.").

## V. CONCLUSION

For the reasons given above, defendant's motion to dismiss plaintiff's amended complaint (ECF No. 25) is denied.  A status conference is set for March 22, 2017, at 9:30 a.m.

Date:  March 8, 2017                                              /s/
                                                                   Joan B. Gottschall
                                                                   United States District Judge